[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The parties were married on December 16, 1976, a total of 22 years. Since August 21, 1997, the parties have been separated. By complaint dated September 15, 1997, the Wife instituted this action claiming a dissolution of marriage, alimony, an assignment of real estate, an equitable division of assets, counsel fees, and other relief. The Husband filed an answer admitting the allegations in the complaint and a cross-complaint claiming a dissolution of marriage, an equitable division of assets and other relief. The case was ably presented over two full days of trial.
Both parties are 43 years of age, well educated, intelligent, articulate and attractive. They each graduated from Amherst College, where they first met and later married, the Husband with a BA in economics and the Wife a BA in psychology. Subsequently, the Husband obtained his Masters of Business Administration from Harvard University and the Wife matriculated at Smith for a Masters degree which she did not complete.
Throughout the marriage and before, the Wife's health has not been good. She suffers from debilitating migraine headaches, a rare liver disease called porphyeria, and emotional problems which required her hospitalization. Early in the marriage she suffered from endometriosis, which was painful, precluded a normal pregnancy and led to a hysterectomy at age 28. Numerous medications were prescribed for her over the years some of which, it was later learned, exacerbated her symptoms. She continues to treat for her various physical conditions, some of which appear to be chronic, and is in therapy for her emotional distress. During the trial, one of her physicians confirmed some of her medical problems and prognosis. Currently, with medication and periodic treatment, her condition seems to be stabilized. A neurologist, Dr. Sheryl Siegal, testified that, despite numerous problems, she has the ability to be in the workplace with an understanding employer and that she would be better off if she did not stay home all day.
The Husband is in apparent good physical health but does have CT Page 14065 some emotional problems which appear to be situational related. He takes two different antidepressant medications which help him control any problems he might have.
At the time of the marriage, typical of young couples, they did not have any assets to speak of. However, the Husband did have a $15,000 inheritance from his grandmother which helped fund his Harvard MBA.
The Wife had numerous jobs of a varied nature during the marriage including full time jobs in a bank, a TV station, and as a regular manpower employee. Employment was hampered by frequent moves, nine all together, and her various illnesses. Nevertheless, she can and should be productive in the right employment setting. It should be noted that she travels extensively, attends church two times per week, sings in the choir, drives an automobile, is computer literate, maintains three cats, a large garden, does her own shopping, cooking, reads books, goes to the beauty parlor weekly, attends the theater, dines out with friends, and watches television regularly. Her testimony indicated she would not take employment unless paid at least $10.00 per hour. Considering all the circumstances, the court finds she has an income capacity of at least $15,600 per year.
Since 1979 the Husband has been employed by IBM, a survivor of the corporate purges of the last decade. His employer thinks highly enough of him to include him in the bonus plan and to offer extensive stock options. A base income of $125,000, supplemented by bonus and stock option income, rose to $214,000 in 1997. In addition to other perquisites, the company provides him with a 401k plan to which the company contributes, life, disability, and medical insurance. He testified to numerous contacts by headhunters and others seeking his services. The court finds he has an income capacity of at least $125,000 per year.
The parties enjoyed a station in life commensurate with their ages, education, and incomes. Each party should, barring unforeseen circumstances such as the Husband's layoff or the Wife's further health deterioration, be able to accumulate assets and produce income in the future. Their respective contributions to the acquisition and preservation in value of the accumulated assets would appear to be reasonably equal. CT Page 14066
As a result of the gynecological problems of the Wife, the parties had no children. At one time they considered adoption but the idea was not pursued.
It would serve no useful purpose to chronicle the causes for the breakdown of the marriage which is clearly irretrievable. Gradually, the parties grew apart. The Wife, somewhat incredulously, claimed the first indication she had that the Husband wanted a divorce was on August 21, 1997 when he came home from work and advised her he wanted out of the marriage. He told her he "needed someone to bring in the bucks" and that he could no longer deal with her illnesses. She described his interest in pornographic videos, excessive drinking, and computer obsession just before the separation. The Husband claimed they had no sexual relationship for several years, that the Wife was materialistic, had different values, wouldn't work, and became a "born again Christian" which was much different from his beliefs. Obviously, the Wife's illnesses took their toll. Several attempts at marriage counseling failed and they drifted apart. It is difficult to say where the fault primarily lies but it is clear that the Husband is the one who wanted out of the relationship. It was sad to see such nice people in such sad straits after so many years together.
The court finds that residence requirements have been satisfied and neither party has been the recipient of public assistance. All pertinent criteria outlined in Chapter 815j of the General Statutes were considered by the court in the entry of the following orders.
 ORDERS
Dissolution of Marriage
The marriage is dissolved on the grounds of an irretrievable breakdown.
Alimony
The Husband shall pay to the Wife periodic alimony of $3,500 per month ($42,000 per year), until the death of either party, remarriage of the Wife or her living with another person as defined in Conn. Gen. Stat, Sec. 46b-86. Said payment shall commence January 1, 1999 and be subject to review when the Husband retires and both parties are the recipients of pension CT Page 14067 income.
As additional periodic alimony, the Husband shall pay twenty-five percent of any employment income received, excluding income from the exercise of stock options, as and when received, in excess of $125,000 per year up to a maximum obligation of $37,500. For example, if the Husband receives a bonus of $40,000 in March, he shall promptly remit $10,000 to the Wife. Likewise, if he receives a raise of $400 per month, he shall promptly increase his monthly payment by $100.
Insurance
The Husband shall name the Wife beneficiary on his $204,000 life insurance policy with the Metropolitan Insurance Company and his $303,000 IBM group life insurance policy as long as he has an obligation to pay alimony. This order shall be subject to modification based upon a substantial change in circumstances.
Should the Wife choose to maintain additional coverage on the defendant's life at her sole cost and expense, the defendant shall cooperate in making application for or submitting to a physical examination for such insurance.
The Husband shall maintain disability insurance as available through his place of employment for so long as he has an alimony obligation to the Wife. This order shall be subject to modification based upon a substantial change in circumstances.
Upon reasonable request, the Husband shall furnish the Wife with satisfactory evidence that said life and disability insurance is in full force and effect.
The Husband shall cooperate with the Wife in any application she should make for COBRA medical insurance benefits at her expense.
Real Estate
The marital residence at 219 Barrack Hill Road shall be immediately listed for sale at a price to be agreed upon by the parties and sold to the buyer with the first reasonable offer. The net proceeds, defined as gross selling price less balance on the first mortgage, real estate commission, and customary closing costs shall be divided equally between the parties. Until sold, CT Page 14068 the Wife shall have exclusive use and occupancy of the premises. Commencing with the January payment, until sold, each party shall be responsible for one half of the charges for mortgage, taxes, insurance, reasonable repairs, and heating fuel. The Wife shall be responsible for all other expenses connected with the property. The court shall retain jurisdiction over the listing, sale and occupancy of the property until sold.
Stock Options
The Husband shall pay to the Wife as a lump sum property distribution an amount equal to one-half of the net after tax and expenses gain from the exercise of any stock options, vested or unvested, which have been awarded as of this date (4,951 shares on the date of trial). If income from the exercise of the options is treated as ordinary income, said income is to be factored out of any computation of additional alimony as described above. In such an event, the Husband's effective tax rate is to be used to calculate the tax as opposed to the capital gains tax rate before the equal distribution is made.
IBM Stock
All shares of IBM stock owned by the Husband on this date shall be divided equally between the parties (Husband's financial affidavit indicated 102 shares on the trial date).
Retirement Assets
The balance in the Husband's 401k plan on December 31, 1998 shall be divided equally between the parties. Said transfer is to be accomplished by a rollover to the Wife in order to avoid and tax consequences to the Husband.
The Wife shall be awarded one-half of the Husband's IBM pension benefits as of December 31, 1998. Said transfer is to be accomplished by a Qualified Domestic Relations Order to be prepared by the Husband's counsel.
The court shall retain jurisdiction until the transfers have been accomplished.
Personal Property
All of the furniture and personal possessions now located in CT Page 14069 the marital residence shall become the property of the Wife with the exception of the following items which the Husband shall be permitted to remove within 30 days from date: silverware, crystal stem-ware, sewing machine, one hunter print, tools, books, photos, and blankets (mother's). The Husband shall also retain all items in his current residence.
The Wife shall retain the 1996 Honda and the Husband the 1996 Jeep subject to the terms of the outstanding lease.
The Husband shall retain his coin collection and rent deposit.
The Wife shall retain the Ridgefield Bank business checking account (balance on date of trial $1,469) and the Husband shall retain the Ridgefield bank and New England Federal Credit Union checking accounts. Any negative balances in the accounts assigned to the Husband shall be his sole responsibility.
Liabilities
The Wife's liabilities to her former attorney, Ellen Lubell, Visa/MasterCard and to her financial planner, as shown on her financial affidavit, shall be her sole responsibility. The Husband's liabilities as shown on his financial affidavit shall be his sole responsibility. All pendente lite obligations of the Husband are to be current through December 31, 1998.
Taxes
By April 15 of each year, until there is no longer any financial obligation for alimony, the parties shall exchange their complete IRS tax returns in order to determine that the alimony payment is accurate and appropriate under the circumstances then existing.
The Husband shall be entitled to claim all deduction for taxes and interest connected with the former marital residence in calendar year 1998 on his state and federal tax returns.
Counsel Fees
The Husband shall pay to the Wife, out of his share of the proceeds from the sale of the marital residence, the sum of $10,000 towards the Wife's counsel fees. CT Page 14070
Miscellaneous
Each party shall sign any necessary documents to effectuate the orders contained herein.
CUTSUMPAS, J.